```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JPMORGAN CHASE BANK, N.A.,

                  Plaintiff,

          – against –                        MEMORANDUM AND ORDER

RONA MAURER, ROSE ROSEMAN, SHIRLEY           13 Civ. 3302 (NRB)
WATSTEIN, LISA M. BISHOP in her capacity
as preliminary executor of the Estate of
Jack E. Maurer, LISA M. BISHOP in her
individual capacity, MARTIN BREGMAN in his
capacity as preliminary executor of the
Estate of Jack E. Maurer, DONNA WARD, MONA
POH TAY a/k/a POH C. TAY, NICOLE LEGUIZAMO
a/k/a JUSTINE LEGUIZAMO, ANDREA ZAUFLICK,
and "JOHN DOE #1" through "JOHN DOE #12,"

                  Defendants.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I.    INTRODUCTION

   This case pits two groups of individuals against each other for the rights to an Individual Retirement Account ("IRA") that was owned by the late Jack Maurer ("Mr. Maurer") and is presently in the custody of the interpleader plaintiff, JPMorgan Chase Bank, N.A ("JPMorgan Chase").[1]

   During his lifetime, Mr. Maurer signed a contract to designate his wife Rona ("Mrs. Maurer") as the IRA's sole

---

[1] JPMorgan Chase makes no claim to the IRA apart.  We previously permitted JPMorgan Chase to withdraw approximately $31,000 from the IRA as full reimbursement of its attorneys' fees, and relieved JPMorgan Chase of any further duty to participate in these proceedings.  See Order, ECF No. 97.

beneficiary, but later named eight other people as beneficiaries (the "Beneficiaries").[2]  Mrs. Maurer relies on her contract with Mr. Maurer to claim the IRA.  <u>See</u> Maurer Am. Answer ECF No. 6.  Six of the eight Beneficiaries rely on Mr. Maurer's designation to claim the IRA.  <u>See</u> Garrett Am. Answer; Zauflick Answer, ECF No. 8; Ward Answer, ECF No. 17; Answer of Bishop, Bregman, Watstein and Tay, ECF No. 18 ("Bishop Answer").  Two other Beneficiaries, daughters of Mrs. Maurer, have not appeared in this action (although they have been served), and the Court is informed that they support their mother's claims.  <u>See</u> Letter, June 12, 2014, ECF No. 95.[3]

Two other defendants, former preliminary executors of the Estate of Jack Maurer (the "Estate") have moved to be

---

[2] Namely: Lisa Bishop; Nicole Leguizamo a/k/a Justine Leguizamo; Nicole Maurer a/k/a Nicole Maurer St. John; Rose Roseman; Mona Poh Tay a/k/a Poh C. Tay a/k/a Tay Poh Choo; Donna Ward; Shirley Watstein; Andrea Zauflick.

Rose Roseman has passed away.  <u>See</u> Garrett Answer, ECF No. 4, <u>amended as</u> Garrett Am. Answer, ECF No. 7.  Because no timely substitution has been filed, we must dismiss her as a defendant.  <u>See</u> Fed. R. Civ. P. 25(a)(1); <u>Unicorn Tales, Inc. v. Banerjee</u>, 138 F.3d 467 (2d Cir. 1988).  This dismissal does not deprive Roseman's estate of its claim to a portion of the IRA, however, for any person may assert a claim to interpleaded property without having been named as a defendant.  This ensures that the interpleader resolves all claims to the stake.  Therefore, we identify one "John Doe" defendant as Kenneth Garrett in his capacity as executor of the Estate of Rose Roseman, and we refer to Garrett as a Beneficiary throughout this Memorandum.

[3] Where clear from context, we will use "Beneficiaries" to refer to all eight Beneficiaries or to the six Beneficiaries who have filed answers in this case.  When precision is necessary, we will use "Answering Beneficiaries" to refer to the six who have answered and "Non-Answering Beneficiaries" to refer to the two who have not.

dismissed.   See Aff. in Supp. of Bishop Mot. ¶¶ 8–10, ECF No. 62.  We grant this motion, and observe that no party has moved under Rule 25(c) to continue this action against the new executors, apparently because the Estate has no interest in the IRA.  See N.Y. EPTL § 13-3.2(a).

Two sets of dispositive motions are pending.  First, the Beneficiaries have filed motions for judgment on the pleadings. See Garrett Mot., ECF No. 44; Zauflick Mot., ECF No. 47; Mot. of Bishop, Bregman, Watstein and Tay, ECF No. 61 ("Bishop Mot."); Snitily Aff., ECF No. 76 (adopting other Beneficiaries' motions on behalf of Ward).  Second, Mrs. Maurer has filed a motion for summary judgment against the Answering Beneficiaries and for default judgment against the Non-Answering Beneficiaries.  See Maurer Mot., ECF No. 54.

Because Mrs. Maurer's claims against Garrett are time-barred, we grant his motion and deny Mrs. Maurer's motion with respect to Garrett's share of the IRA.  Because we cannot determine on the present record whether Mrs. Maurer's claims against the remaining Answering Beneficiaries are time-barred, we deny those Beneficiaries' motions and deny Mrs. Maurer's motion with respect to those Beneficiaries' shares of the IRA. Because the Non-Answering Beneficiaries have not interposed a limitations defense against Mrs. Maurer's claims, we grant Mrs.

Maurer's motion with respect to those Beneficiaries' shares of the IRA (40% total).[4]

## II.  <u>FACTS</u>[5]

During his life, Mr. Maurer accumulated an IRA worth over one million dollars.

In 2001, Mr. and Mrs. Maurer signed an agreement (the "IRA Agreement"), which bound Mr. Maurer to designate Mrs. Maurer as the IRA's sole beneficiary (so long as Mrs. Maurer survived Mr. Maurer, as she did), and which limited the amount that Mr. Maurer could withdraw each year while he was alive.  The IRA Agreement also limited the amount that Mrs. Maurer could

_____

[4] Mrs. Maurer has styled her motion against the non-answering Beneficiaries as a motion for a default judgment.  We will not entertain such a motion when the clerk has not entered a certificate of default.  <u>See</u> Loc. Civ. R. 55.2(b).  Instead, we deem Mrs. Maurer's motion to be one for summary judgment against the non-answering Beneficiaries on the same grounds as her motion against the answering Beneficiaries.

[5] These facts are drawn from the parties' pleadings and affidavits.  With respect to the Beneficiaries' motions for judgment on the pleadings, we assume the truth of non-conclusory facts alleged or admitted by Mrs. Maurer, as well as documents of which we may take judicial notice.  With respect to Mrs. Maurer's motions for summary judgment, we consider evidence outside the pleadings, resolving all genuine factual disputes and drawing all inferences in favor of the Beneficiaries.

In this case, there is little material difference between these two sets of facts.  The key facts are (1) the existence and content of the contract between the Maurers; (2) the existence and content of Mr. Maurer's IRA designation; and (3) the date of Mr. Maurer's death.  <u>See</u> Maurer Am. Answer, Ex. A ("IRA Agr."); Compl., Ex. C ("Beneficiary Designation Form"); Maurer Am. Answer ¶ 5 (date of Mr. Maurer's death).  Mrs. Maurer has alleged the Maurers' contract and the date of Mr. Maurer's death, while the beneficiary designation "can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned."  Fed. R. Evid. 201(b)(2) (permitting judicial notice).

withdraw after Mr. Maurer's death, and contemplated that the IRA would ultimately pass to Mr. and Mrs. Maurer's daughters. See IRA Agr.

In 2003, Mr. Maurer executed a durable general power of attorney in favor of Garrett and Bishop. Compl. Ex. A. The next year, acting on Mr. Maurer's behalf, Garrett and Bishop transferred the IRA to JPMorgan Chase's predecessor (Bear, Stearns Securities Corp., or "Bear Stearns"), see Compl. ¶ 15, and then re-designated the Beneficiaries (including Bishop herself) as the primary beneficiaries of the IRA. See Beneficiary Designation Form. This re-designation (the "2004 Designation") instructed Bear Stearns to distribute 5% of the IRA to Bishop, 15% to Roseman, 5% to Tay, 5% to Ward, 15% to Watstein, 15% to Zauflick, and 20% apiece to Mrs. Maurer's daughters upon Mr. Maurer's death. See id. It is clear that this designation violated the terms of the Maurers' IRA Agreement.

Mr. Maurer passed away on February 6, 2005. Maurer Am. Answer ¶ 5.

After Mr. Maurer's death, Bear Stearns (and later JPMorgan Chase) continued to administer the IRA, which, according to JPMorgan Chase, is now worth approximately $1.7 million. See Compl. ¶ 29. JPMorgan Chase has declined the requests of some Beneficiaries to distribute the IRA according to the 2004

Designation, in the face of a letter from Mrs. Maurer's former counsel threatening "liability or penalties."   Compl. Ex. E at 2 (letter from Steven Shapiro to Bear Stearns).

## III.  <u>PROCEDURAL HISTORY</u>

### A.  <u>The State Court Actions</u>

Mr. Maurer sued Mrs. Maurer in 2003,[6] alleging that Mrs. Maurer had improperly induced Mr. Maurer to re-organize his estate plans in Mrs. Maurer's favor.   After Mr. Maurer died, the case was transferred to the Surrogate's Court, where the Estate sought to take ownership of an apartment on Central Park West, to avoid a certain trust that Mr. Maurer had established, and (most importantly for our purposes) to void the IRA Agreement.   <u>See</u> Am. Compl., <u>Surr. Ct. Action</u>, June 9, 2011.   In the alternative, the Estate demanded $30 million.   <u>See</u> <u>id.</u>

Mrs. Maurer asserted several counterclaims, namely that Mr. Maurer withdrew more from the IRA during his lifetime than the IRA Agreement entitled him to take, and that Mr. Maurer failed to provide financial information to Mrs. Maurer as the IRA Agreement required.   <u>See</u> Verified Answer ¶¶ 44-54, <u>Surr. Ct. Action</u>, July 27, 2011.   However, even after Mr. Maurer died and the 2004 Designation was laid bare, Mrs. Maurer

---

[6] <u>Maurer v. Maurer</u>, Index No. 103968/2003 (N.Y. Sup. Ct., N.Y. Cnty.), <u>transferred sub nom.</u> <u>Bishop v. Maurer</u>, Index No. 575-2005 (N.Y. Surr. Ct., N.Y. Cnty.) (the "<u>Surrogate's Court Action</u>").

never counterclaimed that Mr. Maurer had breached the IRA Agreement by naming other as IRA beneficiaries.

In 2005, Mrs. Maurer sued the Estate's preliminary executors (Bishop and Bregman), Tay, and Ward in a separate action in the Supreme Court.[7] Mrs. Maurer claimed that the defendants had tortiously interfered with Mrs. Maurer's rights under the IRA Agreement (including her right to be named as a beneficiary), and that Bishop, Tay, and Ward had converted the IRA assets by receiving distributions from the IRA. See Compl., Sup. Ct. Action, Oct. 11, 2005. This action was stayed pending the Surrogate's Court Action. Maurer Am. Answer ¶ 12.

In late 2013, Mrs. Maurer, the Estate, and Bishop and Bregman in their individual capacities executed a settlement agreement (the "2013 Settlement") with respect to both state-court actions. See Stip. of Settlement (dated Dec. 11, 2013), ECF No. 31-1. As relevant here, the Stipulation of Settlement provided that the Estate's claims against Mrs. Maurer and Mrs. Maurer's claims in the stayed Supreme Court Action (i.e., her tortious interference and conversion claims) would be discontinued with prejudice.[8] The settlement did not resolve

---

[7] Maurer v. Bishop, Index No. 111828/2005 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Supreme Court Action").

[8] It appears that the discontinuance of the Estate's claims in the Surrogate's Court Action was effective immediately upon the filing of the Stipulation of Settlement in Surrogate's Court. See N.Y. CPLR 3217(a)(2); Stip. of Settlement (stamped as filed in Surrogate's

any claims in this action or Mrs. Maurer's counterclaims in the Surrogate's Court Action (i.e., her claims for Mr. Maurer's over-withdrawals). See id.

At oral argument, the parties represented that the 2013 Settlement had not been consummated and that both state-court actions were still pending. Since then, the Supreme Court Action has been dismissed with prejudice without opposition from Mrs. Maurer. See Order, Sup. Ct. Action (Jan. 8, 2015), filed herein, ECF No. 105-1.

### B.   The Present Action

In 2013, while both state-court actions were pending, JPMorgan Chase filed the present interpleader, demanding that defendants (including Mrs. Maurer and the Beneficiaries) plead among themselves to allocate the IRA that JPMorgan Chase has continued to administer throughout the state-court litigation.[9]

---

Court on Dec. 20 or 30, 2013). However, Mrs. Maurer merely promised that she would discontinue the stayed Supreme Court Action by December 31, 2013, and it appears that she did not do so.

[9] Some Beneficiaries have suggested that JPMorgan Chase filed this action improperly, because Mrs. Maurer lacked entitlement to the IRA funds. That argument has no merit. When a person is faced with two colorable claims to funds in his possession, the law does not require the person to wager his money and reputation on his own assessments of New York contract law, family law, property law, fiduciary law, and civil procedure. Instead, he is entitled to a judicial determination of the claimants' rights. We have no doubt as to the propriety of JPMorgan Chase's filing, or of our own subject-matter jurisdiction under title 28, section 1335 of the U.S. Code.

The probate exception to our subject-matter jurisdiction does not apply, because we can determine this case without overseeing Mr. Maurer's estate or disposing of property in the custody of the Surrogate's Court. See Marshall v. Marshall, 547 U.S. 293, 310

8

We held a conference on November 7, 2013, at which we suggested that the defendants attempt to achieve a global resolution of their disputes, possibly through intervention in the Surrogate's Court Action. That suggestion went unheeded, and the unconsummated partial settlement between Mrs. Maurer and the Estate failed to resolve this portion of the parties' broader dispute. That failure led to the present motions, which we address in this Memorandum.

## IV. DISCUSSION

### A. Preliminary Remarks

It is clear that the Beneficiaries have what one might call "legal title" or "title in the first instance" to the IRA unless some reason is found for voiding the 2004 Designation. It is equally clear that Mrs. Maurer has a superior equitable claim to the IRA, based on her IRA Agreement, unless the statute of limitations has run on her claim (or unless there is cause to invalidate the IRA Agreement).

The Non-Answering Beneficiaries have not pleaded any defense to Mrs. Maurer's claims. Therefore, the Non-Answering Beneficiaries have forfeited this affirmative defense, and Mrs.

---

(2006) (citing Markham v. Allen, 326 U.S. 490, 494 (1946)). Nor is this a case in which we will decline jurisdiction out of concerns of federalism and comity. Cf. Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800 (1976). Based on our reading of the pleadings, no state-court proceeding will determine who is entitled to the IRA, and we can decide this case without resolving any claims pending in state court.

Maurer is entitled to summary judgment with respect to the Non-Answering Beneficiaries' 40% share of the IRA.  The remaining discussion pertain <u>only</u> to the shares of the Answering Beneficiaries.

As for the Answering Beneficiaries, we address in turn (1) Mrs. Maurer's argument that the 2004 Designation was void ab initio; (2) the Beneficiaries' argument that the statute of limitations expired on Mrs. Maurer's equitable claims; (3) Mrs. Maurer's alternative argument that the 2013 Settlement precludes the Beneficiaries from challenging Mrs. Maurer's rights under the IRA Agreement; and (4) Mrs. Maurer's alternative argument that the IRA Agreement gives her a security interest in the IRA as a remedy for Mr. Maurer's improper designation.

### B.   **The 2004 Designation Was Not Void.**

Mrs. Maurer first argues that the 2004 Designation was void.  There are indeed a number of cases in which New York courts have distributed funds (from IRAs, insurance policies, or the like) in derogation of wrongful beneficiary designations.  These cases do not, however, stand for the proposition that wrongful beneficiary designations are generally void.

<u>First</u>, courts have granted assets to the person who should have been named as a beneficiary instead of to the person who

was actually named. _See, e.g._, _Metro. Life Ins. Co. v. Benevent_, No. 90-cv-6768 (LAP), 1993 WL 437757 (S.D.N.Y. Oct. 22, 1993) ("the designation of the children . . . as irrevocable beneficiaries of a life insurance policy when made pursuant to a divorce decree, vests with the children the right to the proceeds of such a policy even if the decedent has changed the beneficiary under the policy."); _Rogers v. Rogers_, 473 N.E.2d 226 (N.Y. 1984); _Simonds v. Simonds_, 380 N.E.2d 189 (N.Y. 1978). But in each of these cases, the result is consistent with the view that the designation itself was valid and that the court merely imposed a constructive trust in order to vindicate the rightful beneficiary's superior equitable claim. Indeed, _Rogers_ and _Simonds_ both explicitly imposed a constructive trust as a remedy, and the New York cases cited in _Metropolitan Life_ indicate that an improper designation is nevertheless valid until a constructive trust is imposed. _See, e.g._, _Markwica v. Davis_, 472 N.Y.S.2d 510 (App. Div. 3d Dep't) (memorandum), _aff'd_, 473 N.E.2d 750 (N.Y. 1984).

_Second_, with respect to state pensions, a specific statute enables the state comptroller to change or correct a beneficiary designation notwithstanding that the designation is valid on its face. _See_ N.Y. RSSL § 803-a; _Johnson v. N.Y. State & Local Ret. Sys._, 941 N.Y.S.2d 369 (App. Div. 4th Dep't 2012). Even in the context of this statute, a wrongful

designation is not automatically void; rather the proper procedure is for the rightful beneficiary to seek a declaratory judgment of her contractual rights in order to take advantage of this section.  See, e.g., Rice v. DiNapoli, 889 N.Y.S.2d 507 (Sup. Ct. Albany Cnty. 2009).

Third, Mrs. Maurer cites Riverside Syndicate, Inc. v. Munroe, 882 N.E.2d 875 (N.Y. 2008), in which the Court of Appeals voided a contract that purported to waive a tenant's rent-control rights.  In Riverside Syndicate, the contract was deemed void because it conflicted with public policy embedded in a specific regulation.  See 882 N.E.2d at 877 (citing 9 NYCRR § 2520.13).  Mr. Maurer acted contrary to a private contract, not contrary to a public law.  An act is not void merely because the act violates a private contract.  To the contrary, a person is generally free to breach his contracts, provided that he pays damages sufficient to make his promisee whole.  See Patton v. Mid-Continent Sys., Inc., 841 F.2d 742, 750 (7th Cir. 1988) ("efficiency is promoted by allowing [a promisor] to break his promise, provided he makes good the promisee's actual losses."); United States v. R.I. Hosp. Trust Co., 355 F.2d 7, 11 (1st Cir. 1966) ("decedent had some powers——perhaps not rights, but powers——which could . . . affect the disposition . . . of [his insurance] policy" even though

decedent's assignment of his insurance policy may have violated a contract).

Fourth, when a designation is executed by an attorney-in-fact, the designation must be within the scope of the attorney-in-fact's power and must be permitted by the principal's own agreement with his investment manager, insurance company, or the like. For example, in William Penn Life Insurance Co. of New York v. Viscuso, 569 F. Supp. 2d 355, 365 (S.D.N.Y. 2008), an attempted re-designation by the decedent's attorney-in-fact was void because the decedent's policy agreement required the decedent himself to execute any re-designation.

Here, Garrett and Bishop's power was not limited, but general. See Power of Attorney, Compl. Ex. A.  Mr. Maurer specifically granted Garrett and Bishop the power to conduct "retirement benefit transactions" on his behalf, see id., which (at the time) included the authority to designate beneficiaries. See N.Y. Gen. Obl. Law § 5-1502L(2) (version effective Jan. 1, 1997, through Aug. 31, 2009).[10]  Furthermore, it has not been pleaded that Mr. Maurer's agreement with Bear Stearns required him to personally execute a re-designation, and we have not found such a provision in his account

_____

[10] The same law, as it existed at the times relevant to this case, specifically allowed a principal's child to designate herself as a beneficiary.  The Court is informed that Bishop was Mr. Maurer's daughter, so Bishop's self-designation was valid.

agreement.   See Customer Agreement for Introduced Clearance Accounts, Compl. Ex. E.

Because there is no reason to find that the 2004 Designation was void ab initio, we must examine the timeliness of Mrs. Maurer's equitable claims.

### C.   At Least Some of Mrs. Maurer's Claims Are Time-Barred.

#### 1.   Mrs. Maurer's Contract Claims Are Time-Barred.

Mrs. Maurer's claim for breach of contract is time-barred. In New York, a claim for breach of contract accrues at the moment of the breach, regardless of whether the promisee knows of the breach. Even when the promisee suffers no damages until later, her claim accrues immediately, because nominal damages are available for breach of contract. See T&N PLC v. Fred S. James Co. of New York, 29 F.3d 57, 60 (2d Cir. 1994). In this case, a breach of contract action is time-barred, because Mr. Maurer breached the IRA Agreement in 2004, more than six years before this action was filed. See N.Y. CPLR 213(2) (six-year limitations period for breach of contract).

Even if a breach of contract claim were not time-barred, the proper remedy would, at this point, be a money judgment against the Estate. Mrs. Maurer could pursue a claim against the Estate in Surrogate's Court, but a claim may be futile if, as Mrs. Maurer has represented, the Estate lacks sufficient

14

non-exempt probate assets to cover Mrs. Maurer's loss of the IRA.

### 2.   At Least Some of Mrs. Maurer's Unjust Enrichment Claims Are Time-Barred.

The more difficult question is whether Mrs. Maurer's unjust enrichment claim against the Beneficiaries is time-barred under the applicable six-year limitations period.[11]  The key questions are (1) when the claim accrued; (2) whether any tolling or estoppel is justified; and (3) whether any exception to the statute of limitations applies.  In answer to these questions, we conclude that the limitations period began at least six years before the filing of this case; that no tolling or estoppel is available against Garrett, but may be available against the remaining Beneficiaries; and that no exception to the statute of limitations applies.

### i.   Accrual

A claim for unjust enrichment accrues once (1) a wrongful act giving rise to a duty of restitution has occurred and (2) the defendant has actually been enriched by that wrongful act.  See Golden Pac. Bancorp v. Fed. Deposit Ins. Co.,

---

[11] A six-year limitations period applies to an action for equitable relief under Rule 213(1) of the CPLR.  Mrs. Maurer has stated, contrary to her interest, that a three-year period applies under section 214(3).  See, e.g., Lia v. Saporito, 909 F. Supp. 2d 149, 165 (E.D.N.Y. 2012) (applying three-year period to action seeking monetary relief for breach of fiduciary duty).  Because the Beneficiaries have not interposed a defense based on the shorter three-year period, we apply a limitations period of six years.

273 F.3d 509, 520 (2d Cir. 2001) (citing Congreg. Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 596 N.Y.S.2d 435, 437 (App. Div. 2d Dep't 1993)). Rona relies on Golden Pacific for the proposition that a defendant is not enriched, and therefore an unjust enrichment claim does not accrue, until the date of a wrongful payment. We disagree.

The defendant in Golden Pacific (the FDIC) placed a bank owned by the plaintiff into receivership in 1985. The FDIC paid its own expenses from the receivership. Between 1991 and 1995, the FDIC also allegedly paid itself wrongful interest on those expenses, calculating the interest on a period dating back to 1985. The plaintiff sued in 1995 to recoup those interest payments. On appeal, the Second Circuit held that the plaintiff's claim for unjust enrichment accrued on the dates (1991–95) when the FDIC wrongfully paid itself interest, not on the earlier dates (1985–95) when the wrongful interest accrued. 273 F.3d at 518–20.

The point of Golden Pacific was that the FDIC was not enriched at all until it paid itself interest from the receivership, even though the FDIC had planned those payments for several years. Golden Pacific does not, however, hold that a transfer of money is the only kind of enrichment that can support an unjust enrichment claim.

To the contrary, any increase in wealth——even if unrealized or illiquid——is an enrichment.  If the enrichment is unjust, then the enrichment is immediately actionable.  While authorities tend to "refer[] for simplicity to receipt of a 'payment,' because the reported cases, nearly without exception, involve disputes over the payment of money," Restatement (3d) of Restitution and Unjust Enrichment § 48 cmt. a, nevertheless several cases make it clear than an enrichment is actionable even when the enrichment is not realized as money until years later.

In Pricaspian Development Corp. (Texas) v. Royal Dutch Shell, PLC, 382 F. App'x 100, 103-04 (2d Cir. 2010), for example, the plaintiff alleged that the defendant had wrongfully used confidential information to obtain rights to a Kazakh oil field in 1993.  By the date of suit, the defendant had not yet realized any net profits from developing the oil field.  Nevertheless, the court held that the unjust enrichment action accrued under New York law when the defendant committed a "wrongful act" by obtaining the Kazakh oil rights to the exclusion of the plaintiff.  Cf. Grynberg v. Shell Exploration B.V., 433 F. Supp. 2d 1229, 1234 (D. Colo. 2006) (applying Colorado limitations law to the same facts, and concluding that the acquisition of exclusive rights was a benefit).

Likewise, unjust enrichment accrues immediately when the form of enrichment is an annuity or other asset that pays out over the course of many years. In such a situation, the plaintiff may sue over the entire asset immediately, rather than waiting for the defendant to receive each dividend. See Frigillana v. Frigillana, 584 S.W.2d 30 (Ark. 1979) (annuity); Robinette v. Hunsecker, 96 A.3d 94 (Md. 2014) (same); Fischback v. Mercuri, 919 N.E.2d 804 (Ohio App. 2009) (same); Omohundro v. Matthews, 341 S.W.2d 401 (Tex. 1960) (oil royalties).

On the date of Mr. Maurer's death, the Beneficiaries came to own something valuable: if not the securities in the IRA themselves, then at least a cause of action to require Bear Stearns to disburse the IRA.[12]   It was unjust for the Beneficiaries to hold this valuable claim because Mrs. Maurer would have held the claim had Mr. Maurer performed the IRA Agreement as promised.

Mrs. Maurer alternatively argues that the statute of limitations cannot run until JPMorgan Chase (i.e., the IRA custodian) repudiates its fiduciary obligations. See, e.g.,

---

[12] The New York Legislature has clarified that "ownership of securities registered in beneficiary form passes to the . . . beneficiaries who survive . . . ." N.Y. EPTL § 13-4.7. However, this law was not in effect at the time of Mr. Maurer's death, see § 13-4.12, and it is therefore unclear whether title to the securities passed to the beneficiaries immediately, or the beneficiaries merely held a cause of action in case the IRA custodian failed to disburse the IRA.

In re Estate of Barabash, 286 N.E.2d 268 (N.Y. 1972). This would be correct if Mrs. Maurer were alleging that JPMorgan Chase unjustly enriched itself through a breach of JPMorgan Chase's fiduciary obligations to her. But Mrs. Maurer's claim is that the Beneficiaries were unjustly enriched through a breach of Mr. Maurer's contractual obligations. Therefore the doctrine of repudiation has no bearing on this case.

To the extent that a constructive trust is a distinct cause of action, rather than a remedy for unjust enrichment, the accrual date is nevertheless identical. Cf. Restatement (3d) of Unjust Enrichment and Restitution § 55 cmt. f ("Constructive trust is a remedy, not a cause of action."). An action to impose a constructive trust, like one for unjust enrichment, accrues upon "the occurrence of a wrongful act or event which creates a duty of restitution." Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 18 (2d Cir. 1983); accord Zane v. Minion, 882 N.Y.S.2d 255, 257 (App. Div. 2d Dep't 2009).

### ii.  Tolling and Estoppel

#### a.  Statutory Tolling (CPLR 207)

Mrs. Maurer first argues the statute of limitations is tolled with respect to Bishop, Tay, Watstein, and Zauflick (the "Out-of-State Beneficiaries"), because each of these Beneficiaries was outside of New York for some amount of time while the statute of limitations was running. See N.Y. CPLR

207.  Rule 207 provides that "[i]f, after a cause of action has accrued against a person, that person departs from the state and remains continuously absent therefrom for four months or more, . . . the time of his absence . . . is not a part of the time within which the action must be commenced."  However, this provision does not apply "while jurisdiction over the person of the defendant can be obtained without personal delivery of the summons to the defendant within the state."  N.Y. CPLR 207(3).

In opposition, the Out-of-State Beneficiaries argue that Mrs. Maurer could have pursued a constructive trust action in New York through the New York courts' in rem jurisdiction over the IRA.  See N.Y. CPLR 301 (authorizing courts to exercise traditional forms of personal jurisdiction).

We accept, for the sake of argument, that New York is the situs of the IRA, and that Mrs. Maurer could have vindicated her rights to the IRA by proceeding against the IRA in rem or quasi in rem. Cf. Koehler v. Bank of Bermuda Ltd., 911 N.E.2d 825 (N.Y. 2009) (identifying New York as a situs of a bank's obligation to deliver out-of-state securities to a judgment debtor when New York courts had personal jurisdiction over the bank, and permitting garnishment of the bank on this basis).

It appears to be a question of first impression whether the statute of limitations runs while a defendant's property is subject to in rem or quasi in rem jurisdiction in New York but

the defendant himself is not subject to in personam jurisdiction. We conclude that the Out-of-State Beneficiaries' argument fails, because jurisdiction over the Out-of-State Beneficiaries' property is different from jurisdiction over the Out-of-State Beneficiaries' persons.

The text of Rule 207(3) exempts an out-of-state defendant from tolling only when "jurisdiction <u>over the person of the defendant</u> can be obtained." (Emphasis added.) The words "the person of the defendant" connote in personam, rather than in rem, jurisdiction, and emphasize that this provision applies only when the defendant himself is subject to in personam jurisdiction. To apply this exception when jurisdiction over the <u>property</u> of the defendant could have been obtained would be to read the underlined text out of the statute.

This reading is consistent with cases interpreting Rule 207's predecessor, section 19 of the old Civil Procedure Act), such as <u>United States v. Portrait of Wally, a Painting by Egon Schiele</u>, No. 99-cv-9940 (MBM), 2002 WL 553532 (S.D.N.Y. Apr. 12, 2002), and <u>Chapin v. Posner</u>, 85 N.E.2d 172, 177-78 (N.Y. 1949). In both those cases, the courts applied section 19 to in rem proceedings. <u>Portrait of Wally</u> held that an in rem suit against a painting was tolled while the defendant object was outside New York (and thus not susceptible to New York jurisdiction through any means). <u>Chapin</u> held that an

21

in rem claim for foreclosure was tolled while it was impossible
to acquire jurisdiction over the property through in-state
service of the mortgagors, even though it would have been
possible to acquire jurisdiction over the property through
other means.[13]  Both of these cases properly analyzed tolling of
an in rem claim by evaluating whether a New York court could
have acquired jurisdiction over the property itself through the
means identified in the exceptions to former section 19.
Conversely, tolling of an in personam claim depends on whether
a New York court could have acquired jurisdiction in personam
over the defendant through the means identified in the
exceptions to Rule 207.

We therefore conclude that tolling under CPLR 207 is
available to Mrs. Maurer, depending on when the Out-of-State
Beneficiaries were outside New York and for how long.  We
cannot grant the Out-of-State Beneficiaries' motions for
judgment on the pleadings, because we cannot conclude from the
pleadings that they were inside New York long enough to avoid
tolling, and it is entirely plausible that they were outside
New York for much of the time since Mr. Maurer's death.  On the

---

[13] Chapin is probably not good law, because the exceptions to section
19 tolling were considerably narrower than the exceptions to Rule 207
tolling.  Under CPLR 207(3), the statute of limitations for an in rem
claim is not tolled while the res is subject to in rem jurisdiction.
By contrast, we hold here that the statute of limitations for an
in personam claim is tolled even though some property related to the
claim is subject to in rem jurisdiction.

other hand, we will not grant summary judgment to Mrs. Maurer without first allowing both Mrs. Maurer and the Out-of-State Beneficiaries to bring forth relevant evidence.[14]   Accordingly, the parties must conduct <u>targeted</u> discovery on this question.[15]

### b.   <u>Equitable Tolling</u>

Mrs. Maurer next argues that the statute of limitations should be equitable tolled because she was sufficiently diligent in pursuing her rights under the IRA Agreement.

Mrs. Maurer chiefly relies on <u>Burnett v. New York Central Railroad Co.</u>, 380 U.S. 424 (1965), in which the U.S. Supreme Court held that a federal statute of limitations should be tolled while a suit is pending in an improper venue.  <u>Burnett</u>

---

[14] Bishop, Watstein, and Zauflick have admitted that they reside outside New York, and therefore face a rebuttable presumption that they were outside of New York during the limitations period.  <u>See</u> <u>Childs v. Brandon</u>, 459 N.E.2d 149, 150 (N.Y. 1983); Bishop Answer ¶ 2 (admitting that Bishop and Watstein reside outside New York); Zauflick Answer ¶ 10 (admitting that Zauflick resides outside New York).  Tay has pleaded that she resides in New York, <u>see</u> Bishop Answer ¶ 9 (adopting Compl. ¶ 8), so Mrs. Maurer must present evidence that Tay either resides outside New York (in which case Tay will face the same presumption as the other Out-of-State Beneficiaries) or that Tay was absent from New York long enough to trigger CPLR 207.

[15] In inviting limited discovery, we do not intend to foreclose the possibility that the Out-of-State Beneficiaries were subject to personal jurisdiction through some mechanism other than in-state service.  It appears that Mrs. Maurer was able to secure personal jurisdiction over Bishop and Tay in the Supreme Court Action, although it is at least conceivable that those two Beneficiaries were subject to specific personal jurisdiction on Mrs. Maurer's tortious interference claims (for their tortious conduct in New York, <u>see</u> N.Y. CPLR 302(a)(2)) without being subject to jurisdiction for their receipt of IRA funds.

is inapposite because <u>Burnett</u> dealt with a <u>federal</u> statute of limitations (45 U.S.C. § 56) rather than a New York statute.

In fact, New York has a specific rule to avoid the injustice that <u>Burnett</u> addressed.  If an action is dismissed for improper venue (or a variety of other reasons), then the plaintiff may commence a new action on the same facts within six months, so long as the new action would have been timely when the plaintiff brought the mis-venued action.  <u>See</u> N.Y. CPLR 205(a).  But this provision has no application here, because Mrs. Maurer has never been dismissed for a qualifying reason from a suit in which she alleged that the 2004 Designation was wrongful.[16]

Even if we believed that <u>Burnett</u> required tolling whenever a litigant is diligent enough, we would still not apply a "sufficient diligence" doctrine on these facts.

Mrs. Maurer points to nothing in the Surrogate's Court pleadings to show that she presented her right to be named as the IRA's sole beneficiary.  With respect to the IRA Agreement, her counterclaims alleged only that Mr. Maurer had committed entirely different breaches: withdrawing too much during his

---

[16] Mrs. Maurer arguably raised the wrongful 2004 Designation in the Supreme Court Action, which was recently dismissed.  However, the Supreme Court Action was dismissed with prejudice because of Mrs. Maurer's voluntary settlement of that action.  Therefore, the dismissal constituted a judgment "upon the merits" (N.Y. CPLR 205(a)) which does not qualify for relief.

lifetime and failing to produce financial statements. Instead, she relies on a 2006 tax return in which the Estate's preliminary executors noted that the IRA (incorrectly described as a Salomon Smith Barney IRA) was "subject to undetermined claim in NY County Surrogate's Court." We cannot tell whether the executors were referring to some claim that Mrs. Maurer had threatened to file in Surrogate's Court over the wrongful 2004 Designation, or to the possibility that Mrs. Maurer would obtain a security interest in the IRA on the basis of her pending overwithdrawal claims (see infra, IV.D.). All we can say with any confidence is that Mrs. Maurer's own pleadings in the Surrogate's Court Action failed to raise the issue of the 2004 Designation. Indeed, a letter from Mrs. Maurer's attorney to the Surrogate's Court dated November 18, 2013, strongly suggests that Mrs. Maurer had never mentioned the IRA's undistributed balance to the Surrogate's Court until that letter in 2013. See ECF No. 102-1.

Even in the Supreme Court Action, filed after Mr. Maurer's death, Mrs. Maurer did not clearly allege any claim against anyone for mere receipt of rights to the IRA. She alleged in a conversion claim that Mr. Maurer had withdrawn assets from the IRA before his death, but made no parallel claim with respect to assets that Mr. Maurer distributed after his death. And she alleged in a tortious interference claim that several

individuals had tortiously interfered with her right to be designated as the sole beneficiary.

### c.   **Equitable Estoppel**

Although Mrs. Maurer's reliance on equitable tolling is misplaced, it is possible that the related doctrine of equitable estoppel will save her claim against the Beneficiaries who were named as defendants in the Supreme Court Action: Bishop, Tay, and Ward (the "Tortious Interference Beneficiaries").[17]

As described above, Mrs. Maurer alleged that the Tortious Interference Beneficiaries (and some other individuals who are not Beneficiaries at all) unduly influenced Mr. Maurer to change his estate plans, including his beneficiary designation, even though each of the Tortious Interference Beneficiaries knew that Mr. Maurer had promised to make Mrs. Maurer his sole beneficiary.

Mrs. Maurer's tortious interference claims are not equivalent to her recent unjust enrichment claims, despite some overlap between facts and parties. Her tort claims arise as a result of wrongful interference with her rights to the IRA; she

---

[17] In 2006, before the Supreme Court Action was stayed, Mrs. Maurer sought to add Garrett as a defendant as well. Garrett, however, appears in this action in a fiduciary capacity, not on his own behalf. We will not apply any estoppel doctrine against Rose Roseman's estate simply because such a doctrine might be applied against executor Garrett in his individual capacity.

accuses the Supreme Court defendants of conniving to rearrange Mr. Maurer's estate planning.   By contrast, her new unjust enrichment claims arise, regardless of fault, from the Beneficiaries' receipt of rights to the IRA.   Nor is unjust enrichment a proper measure of damages for tortious interference.   From a tortious interference action, Mrs. Maurer could recover her own losses, but could not require the tortfeasors to disgorge their own profits beyond her losses. See McRoberts Protective Agency, Inc. v. Lansdell Protective Agency, Inc., 403 N.Y.S.2d 511, 514 (App. Div. 1st Dep't 1978).

However, it is plausible that Mrs. Maurer would have presented timely unjust enrichment claims in the Supreme Court Action, had not the Tortious Interference Beneficiaries agreed to stay the Supreme Court Action.   This may be a basis to estop the Tortious Interference Beneficiaries from interposing the statute of limitations against Mrs. Maurer.

Normally, a voluntary agreement for a temporary stay is "considered to have been made in view and without intending to avoid or circumscribe the effect of the Statute of Limitations." Robinson v. City of New York, 265 N.Y.S.2d 566, 569 (App. Div. 1st Dep't 1965).   However, in some circumstances, "the doctrine of equitable estoppel may be applied to preserve the rights of a party who has postponed action in conformity with an agreement with a defendant for a

stay of suit." Id.  For example, in Robinson, the parties had agreed to stay the plaintiff's suit while the defendant examined the plaintiff.  The examination was not completed by the end of the limitations period, and the defendant attempted to set up a limitations defense.  Under those circumstances, the court held that the defendant was estopped from pleading limitations.

The equities were clear in Robinson.  The defendant knew which claim plaintiff wished to bring, the defendant sought a stay, the plaintiff was unable to unilaterally terminate the stay agreement before the defendant had completed its examination, and the defendant's tardy examination made it impossible for the plaintiff to bring a claim.

The present situation is much less clear.  We are not sure whether the Tortious Interference Beneficiaries knew that Mrs. Maurer wished to assert a claim to the IRA independent of her tort claims against them, and we are not inclined to hold the Beneficiaries to account for failing to guess that Mrs. Maurer wished to add new claims.  We are not sure whether the stay agreement prevented Mrs. Maurer from unilaterally ending the stay and filing suit on her unjust enrichment claims; if the stay did not bar Mrs. Maurer from a timely filing, then Robinson estoppel is unwarranted.  We are also not sure of the precise text of the stay, and we are not sure whether the stay

was incorporated into a court order that prevented Mrs. Maurer for filing an unjust enrichment claim.[18]

In view of these uncertainties, we cannot grant judgment on the pleadings to the Tortious Interference Beneficiaries. In any event, the stay has no effect on the ability of other Beneficiaries to plead the statute of limitations.

### iii. Other Exceptions to the Statute of Limitations

#### a. Relation Back

Rule 203(f) of the CPLR provides that a claim asserted in an amended pleading relates back to "the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions [or] occurrences . . . to be proved pursuant to the amended pleading." An amended pleading that names a new defendant relates back only if the new defendant is "united in interest" with an original defendant and if "the new party knew or should have known that, but for an excusable mistake by [the party filing the pleading] as to the identity of the proper parties, the action would have

---

[18] If so, CPLR 204(a) may have tolled Mrs. Maurer's claim, although this result is unlikely. Mrs. Maurer has already disclaimed reliance on Rule 204(a) at oral argument, and Rule 204(a) appears to depend on the existence of a court order that prevents commencement of an action in any forum. An ordinary stay order simply pauses some pending litigation, without preventing litigants from filing new causes of action in a separate action. See 1544-48 Props., L.L.C. v. Maitre, 712 N.Y.S.2d 303 (App. Term 2d Dep't 2000) (landlord properly filed a non-payment proceeding despite a judicial stay in landlord's pending holdover proceeding against the same tenant).

been brought against him as well." <u>Buran v. Coupal</u>, 661 N.E.2d 978, 981 (N.Y. 1995) (quoting <u>Brock v. Bua</u>, 443 N.Y.S.2d 407, 412 (App. Div. 2d Dep't 1981)).

Mrs. Maurer suggests that she could, at this late juncture, amend her Surrogate's Court counterclaims to add a claim against the Beneficiaries. We doubt that she is correct,[19] but need not resolve our doubts. Mrs. Maurer has filed no timely pleading in <u>this</u> forum, and we can find no authority to suggest that a claim in this forum should be deemed timely simply because she might have filed a timely claim in some other forum.

### b.   <u>Survival of Defense of Counterclaim</u>

Under New York law, a defense or counterclaim is "not [time-]barred to the extent of the demand in the complaint" "if the defense or counterclaim arose from the transactions,

---

[19] There are at least three potential problems with Mrs. Maurer's suggestion. First, it is unclear that her "wrongful designation" claim springs from the "transactions or occurrences" (N.Y. CPLR 203(f)) as her "wrongful overwithdrawal" claim. Second, it is unclear that the Estate is "united in interest" with the Beneficiaries. Parties are "united in interest" only when their interests are so identical that the defenses available to them are identical. <u>See, e.g.</u>, <u>Connell v. Hayden</u>, 443 N.Y.S.2d 383, 392 (App. Div. 2d Dep't 1981). But here, the statute of limitations accrued at different times with respect to the Estate (at the moment of breach) and the Beneficiaries (at the moment of Mr. Maurer's death); the Beneficiaries may be able to claim that the Surrogate's Court lacks jurisdiction over a dispute between living parties; and the Estate may be able to raise personal defenses that the Beneficiaries cannot. Third, the choice to name the Estate rather than the Beneficiaries might not be characterized as a "mistake as to . . . identity," <u>Buran</u>, 661 N.E.2d at 981, let alone an "excusable" one, <u>id.</u>

occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends."   N.Y. CPLR 203(d) (the "recoupment provision").   Mrs. Maurer argues that her claim to the IRA is such a defense or counterclaim, and that her claim is therefore not time-barred.

We must decide how this rule applies to interpleader claims in general, and to Mrs. Maurer's claims in particular.

We have not found any case, and the parties have not referenced any, which has applied Rule 203(d) to interpleader claims.   Thus, we consider this question to be one of first impression, and we hold that Rule 203(d) applies to a pleading that is in the nature of a counterclaim or defense, regardless of the manner in which the pleading is formally styled.[20]   To ascertain whether a given pleading is in the nature of a counterclaim or defense, we must examine how the matter would have been pleaded had the controversy arisen in the normal adversarial course.

We arrive at this rule for three reasons.

First, this rule is consistent with how New York courts apply section 203(d) to cross-claims.   See EverHome Mortg. Co.

---

[20] Additionally, the Second Circuit has held that Rule 203(d) will not save the pleading of the party who commenced a case, regardless of the case's posture.   See 118 E. 60th Owners, Inc. v. Bonner Props., Inc., 677 F.2d 200, 203 (2d Cir. 1982).   This rule does not bar Mrs. Maurer's claim because plaintiff, not Mrs. Maurer, commenced this action.

v. Charter Oak Fire Ins. Co., No. 07-cv-98 (RRM)(RML), 2012 WL 868961 at *10 (E.D.N.Y. Mar. 14, 2012) (collecting cases). The "recoupment" provision of section 203(d) saves a cross-claim that, like a defense or a recoupment counterclaim, resists "affirmative relief against [the cross-claimant]," but "has no application" otherwise. Alvarez v. Attack Asbestos, Inc., 731 N.Y.S.2d 431, 433 (App. Div. 1st Dep't 2001).

Mrs. Maurer cites cases, of which there are many, in which New York courts have applied section 203(d) to cross-claims of any kind. See, e.g., Long v. Sowande, 810 N.Y.S.2d 195, 197 (App. Div. 1st Dep't 2006); Alvarez, 731 N.Y.S.2d at 433. These cases are inapposite because they deal with a different provision of section 203(d), not at stake in this case, which states that a "defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed . . . ." The policy of this general provision is to allow all claims in a case to relate back to the same date, while the policy of the "recoupment" provision is to prevent the injustice that would otherwise result when one claim is timely and an offsetting claim is untimely.

Second, this rule is consistent with the result in the only out-of-state case we have found applying analogous rules in the interpleader context. In McBryde v. Curry, 914 S.W.2d 61 (Tex. Ct. App. 1995), a life insurance company filed an

32

interpleader against the named beneficiaries of a decedent's policy and a creditor of the decedent.  The creditor alleged that she was entitled to a portion of the life insurance policy on the basis of a secured note.  The statute of limitations had run out on the creditor's claim, but she argued that her claim was preserved by the Texas rule analogous to Rule 203(d).  <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.069(a) ("If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation . . . ."). The court declined to treat the creditor's claim as a counterclaim or as a cross-claim because neither the plaintiff nor the other defendants sought monetary relief against the creditor.  <u>See</u> <u>McBryde</u>, 914 S.W.2d at 620.

<u>Third</u>, in deciding whether federal question jurisdiction exists over a Rule 22 interpleader, courts have considered whether a federal question would have necessarily been raised by a complaint had the case been brought in the usual sequence of pleadings.  <u>See</u> <u>Comm. Union Ins. Co. v. United States</u>, 999 F.2d 581, 585 (D.C. Cir. 1993); <u>Gen. Ry. Signal Co. v. Corcoran</u>, 921 F.2d 700, 706 n.6 (7th Cir. 1991); <u>Morongo Band of Mission Indians v. Cal. State Bd. of Equalization</u>, 858 F.2d 1376, 1383–84 (9th Cir. 1988); <u>Bell & Beckwith v. U.S. IRS</u>,

766 F.2d 910, 913–16 (6th Cir. 1985); CPS Elec., Ltd. v. United States, 166 F. Supp. 2d 727, 729–30 (N.D.N.Y. 2001); Banco de Ponce v. Hinsdale Supermarket Corp., 663 F. Supp. 813, 817 (E.D.N.Y. 1987); cf. Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 672–74 (1950) (announcing similar rule in the context of the Declaratory Judgment Act); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908) (holding that federal jurisdiction exists only when a federal question is necessarily raised on the face of a well-pleaded complaint).

This suggests a general approach: when one procedural rule (such as the Mottley rule or section 203(d)) requires a court to identify a particular pleading (such as a complaint or a counterclaim), and another mechanism (such as statutory interpleader, rule interpleader, or the Declaratory Judgment Act) alters the sequence of pleading, the court must first arrange the pleadings as they would have been presented in the normal course and then must apply the procedural rule to the re-arranged pleadings.  Applying this rule here, we conclude that Mrs. Maurer's claim is in the nature of an affirmative claim against the Beneficiaries, and therefore does not qualify for relief under section 203(d).

The Beneficiaries claim that they are entitled to the IRA under the 2004 Designation and Mr. Maurer's contract with Bear Stearns.  Outside the interpleader context, they would bring

their claim directly against JPMorgan Chase, as a claim for breach of contract or (depending on JPMorgan Chase's precise actions in withholding the IRA) for breach of fiduciary duty or conversion. Although Mrs. Maurer might choose to intervene in such an action, the Beneficiaries themselves would not need any relief against Mrs. Maurer in order to secure possession of the IRA from JPMorgan Chase.

By contrast, Mrs. Maurer claims that she is entitled under the law of unjust enrichment to any property that the Beneficiaries receive as a result of Mr. Maurer's wrongful designation. Outside the interpleader context, she would bring this claim against the Beneficiaries directly. Although she might enforce her claim by attaching the Beneficiaries' property in the hands of JPMorgan Chase, she would have no colorable claim against JPMorgan Chase, because JPMorgan Chase (unlike Mr. Maurer) has never had any contractual duty to her.

Mrs. Maurer's claim against the Beneficiaries is not a true counterclaim or defense against any relief that the Beneficiaries seek against her. To the contrary, the Beneficiaries have a claim against JPMorgan Chase, and it is Mrs. Maurer who seeks affirmative relief against the Beneficiaries. Therefore, Mrs. Maurer's claim is not in the nature of a counterclaim or defense, and is not saved by section 203(d).

Because we conclude that Mrs. Maurer's claim is not a counterclaim or defense, we need not consider whether her claim is sufficiently related to the Beneficiaries claims to qualify for relief under section 203(d).   Compare Bloomfield v. Bloomfield, 764 N.E.2d 950, 952 (N.Y. 2001) (applying section 203(d) to permit a wife's challenge to a 30-year-old prenuptial agreement propounded by her husband), with SCN Corp. v. Fisher Park Lane Co., 358 N.E.2d 1024, 1027 (N.Y. 1976) (declining to apply section 203(d) to permit a landlord to seek reformation of a lease on which his tenant filed an action for overpayment).

### 3.   Statute of Limitations—Conclusion

The statute of limitations on Mrs. Maurer's claim against the Beneficiaries began to run in 2005 when Mr. Maurer passed away.  With respect to the Out-of-State Beneficiaries (Bishop, Tay, Watstein, and Zauflick), some limited discovery is necessary to determine whether CPLR 207 tolled Mrs. Maurer's claim.  With respect to the Tortious Interference Beneficiaries (Bishop, Tay, and Ward), more information is necessary to determine whether they should be estopped from pleading the statute of limitations.  With respect to Watstein, her claim is simply barred by the statute of limitations.

### D.   Mrs. Maurer Does Not Have a Security Interest in the IRA on the Basis of Mr. Maurer's Improper Designation.

36

Mrs. Maurer argues that the IRA Agreement gave her a security interest in the IRA, to secure Mr. Maurer's promise that he would designate her as a beneficiary.

The IRA Agreement appears to give Mrs. Maurer a security interest in the IRA for any overwithdrawals that Mr. Maurer made during his lifetime.   In full, the relevant passage states:

> Jack agrees that, during his lifetime, to the extent he violates the provisions of subparagraphs "a" and "b" of this paragraph "1" [i.e., the provisions that restrict his withdrawals] by receiving funds in excess of the maximums prescribed therein, for each one dollar ($1) received from either the IRA . . .  Proceeds above such maximum, he will pay to Rona two dollars ($2) from his personal assets other than the IRA and the ESOP Proceeds, with [9% interest].   To the extent that Jack's personal assets are insufficient to make such payment to Rona, Jack's obligation under this subparagraph "d" shall become a debt of his estate, <u>secured by this Agreement</u>.

IRA Agreement ¶ 1.d. (emphasis added).

This provision is confusing in at least two ways.  First, Mr. Maurer's obligation becomes a debt of his Estate, but the IRA and ESOP are not probate assets, so the agreement appears to provide that a debt of the Estate is secured by the assets of a different entity.  Second, the phrase "secured by this Agreement" is an odd way of expressing "secured by the IRA" (if that was what was intended).  But whatever this paragraph may

mean, it certainly does not give Mrs. Maurer a security interest in order to enforce the IRA Agreement's provision requiring Mr. Maurer to name her as the sole beneficiary. This paragraph, by its own terms, describes remedies only for overwithdrawals within Mr. Maurer's lifetime.

In concluding that Mrs. Maurer lacks a security interest on the basis of Mr. Maurer's improper designation, we do not determine whether she has a security interest in the IRA on the basis of Mr. Maurer's overwithdrawals. She has not advocated this as a basis for a security interest in the federal proceedings, and it would be inappropriate for this Court to express an opinion as to the likely outcome of Mrs. Maurer's suit against the Estate in Surrogate's Court. We mention this only to emphasize that we do not intend this opinion to prevent Mrs. Maurer from pursuing her existing claims in Surrogate's Court, from obtaining final or provisional remedies related to the IRA funds in that court,[21] or from perfecting or foreclosing

---

[21] It is conceivable that the Surrogate's Court will attach or otherwise restrain the IRA while this case is pending, if it appears that (1) Mrs. Maurer is likely to succeed on her pending claims in that court, (2) the Estate's probate assets are insufficient to make Mrs. Maurer whole, and (3) the IRA is available to satisfy the remainder of the Estate's debts under New York's probate law and exemption law. If the Surrogate's Court attaches the IRA while this case is pending, we will, out of comity, reconsider whether to continue exercising jurisdiction over this case. At the very least, we will limit ourselves to declaring the merits of the claims before us, and we will not order JPMorgan Chase to disburse any assets in conflict with orders of the Surrogate's Court.

upon any security interest over the IRA funds that she may possess in relation to her pending claims in that court.

    **E.**   **The Stipulation of Settlement**

Mrs. Maurer finally argues that at least some of the Beneficiaries should be barred from alleging undue influence as a defense to Mrs. Maurer's claims under the IRA Agreement. Such a defense would mirror Mr. Maurer's claims (and later the Estate's claims) against Mrs. Maurer in the Surrogate's Court Action——claims that were dismissed with prejudice in accordance with the Stipulation of Settlement.

Mrs. Maurer argues that the Estate's discontinuance of its claims is res judicata against Bishop (who signed the Stipulation of Settlement in her individual capacity) and against all Beneficiaries who were devisees under Mr. Maurer's will (and who, according to Mrs. Maurer, are in privity with the Estate).[22]

We consider it premature to analyze Mrs. Maurer's res judicata argument until (1) we resolve the pending statute of limitations issues, (2) some Devisee Beneficiary sets forth a defense that the IRA Agreement is invalid, and (3) it becomes

---

[22] Namely, all Answering Beneficiaries except Ward (the "Devisee Beneficiaries"). There is no colorable argument that Ward——a non-devisee who did not sign the Stipulation of Settlement——should be bound by the Estate's agreement to dismiss its claims.

clear that Mrs. Maurer has substantially performed her side of the settlement.

## V.    CONCLUSION

Mr. Maurer had the <u>power</u> to change the beneficiaries of his IRA, and his attorneys-in-fact had the power to act on his behalf, so the 2004 Designation effected by his attorneys-in-fact is valid.  Although Mr. Maurer did not have the <u>right</u> to do so under the IRA Agreement, Mrs. Maurer's time to seek relief from the wrongful beneficiaries has passed, unless she benefits from tolling or estoppel.  Furthermore, Mr. Maurer's wrongful re-designation did not give rise to any security interest.

Therefore, Roseman's executor Garrett——representing the sole in-state Beneficiary who was not a party to the stay in the Supreme Court Action and who has raised a limitations defense——will be entitled to Roseman's 15% share of the IRA. The Out-of-State Beneficiaries have also raised a limitations defense, but their defense depends on factual issues of section 207 tolling that we cannot resolve on the present record.  The Tortious Interference Beneficiaries have also raised a limitations defense, but their defense depends on factual issues related to the stay of the Supreme Court Action.  The Non-Answering Beneficiaries have forfeited their limitations

defense, so Mrs. Maurer is entitled to summary judgment with respect to their shares.[23]

Accordingly, we hereby order the following:

- Defendant Roseman is dismissed, and Kenneth Garrett in his capacity as executor for the estate of Rose Roseman is added as a defendant.

- The motion to dismiss defendants Bishop and Bregman in their capacities as preliminary co-executors (ECF No. 62) is granted.

- Garrett's motion for judgment on the pleadings (ECF No. 44) is granted.

- All other Beneficiaries' motions for judgment on the pleadings (ECF Nos. 47, 61, 76) are denied.

- Mrs. Maurer's motion for summary judgment against the Answering Beneficiaries (ECF No. 54) is denied.

---

[23] This Order neither addresses nor resolves many of the outstanding issues in this protracted litigation, including: whether Mr. Maurer withdrew excessively from the IRA during his lifetime, and by how much; whether Mrs. Maurer has a security interest in the IRA with respect to any such withdrawals; the Beneficiaries' cross-claims against Mrs. Maurer for tortious interference with the Beneficiaries' interest in Mr. Maurer's contract with JPMorgan Chase; the assertion by some Beneficiaries that the IRA Agreement arose out of undue influence on the part of Mrs. Maurer; which obligations must be performed by whom under the settlement agreement between Mrs. Maurer and the Estate; whether any breach of the settlement agreement has occurred, and if so by whom; whether paragraph 1.d. of the IRA Agreement constitutes an impermissible penalty; and whether an unjust enrichment claim may lie against any defendant who receives the IRA without contributing to estate taxes.

- Mrs. Maurer's motion for default judgment against the Non-Answering Beneficiaries (also ECF No. 54) is deemed a motion for summary judgment and is granted.

- It is hereby declared that defendants are entitled to the IRA (less costs and fees awarded by the Court to JPMorgan Chase) in the following proportions: 40% to Mrs. Maurer, 15% to Garrett in his capacity as executor of the Estate of Rose Roseman, and 45% yet to be determined.

- JPMorgan Chase shall disburse 40% of the IRA (less costs and fees previously awarded by the Court) to Mrs. Maurer forthwith.[24]

- The parties whose claims are yet to be resolved (Mrs. Maurer, Bishop, Tay, Ward, Watstein, and Zauflick) shall confer and shall send us a letter proposing an expeditious schedule for discovery and briefing, limited to the questions identified in this Memorandum.

---

[24] We will allow Mrs. Maurer to receive the Non-Answering Beneficiaries' assigned shares of the IRA immediately, because there is no genuine dispute between Mrs. Maurer and those Beneficiaries. However, we do not order JPMorgan Chase to release any funds to Garrett at this time. Once we are in a position to decide all the Answering Beneficiaries' claims, we will enter a final order directing JPMorgan Chase to disburse the Answering Beneficiaries' shares appropriately.

- The Clerk of Court is respectfully requested to terminate Bishop (in her capacity as executor), Bregman, Leguizamo, Nicole Maurer, and Roseman as parties to this case, to add Kenneth Garrett (in his capacity as executor for the estate of Rose Roseman) as a defendant, and to close all open motions.

**IT IS SO ORDERED.**

Dated:    New York, New York
          February __7__, 2015

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

43